**SHAMIS & GENTILE, P.A.**
Katherine S. Phillips (SBN: 353048)
kphillips@shamisgentile.com
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 479-2299

**EDELSBERG LAW, P.A.**
Scott A. Edelsberg (SBN: 330090)
scott@edelsberglaw.com
Gabriel Mandler**
gabriel@edelsberglaw.com
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320

***pro hac vice application forthcoming*

*Attorneys for Plaintiff and the Putative Classes*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ethan Allison, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UTZ Brands, Inc. and UTZ Quality Foods, LLC,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ethan Allison ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Defendants UTZ Brands, Inc. and UTZ Quality Foods, LLC (collectively, "Defendants") based upon personal knowledge as to himself, and upon information, investigation and belief of his counsel.

## INTRODUCTION

1. This class action seeks to challenge Defendants' false and deceptive practices in the marketing and sale of one of their products, which is marketed as made entirely with avocado oil.

2. Specifically, Defendants have sold and marketed their Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips (the "Product") with the representation "AVOCADO OIL" (the "Avocado Oil Representation"), representing to consumers that their Product is made entirely with avocado oil.

3. Despite the Avocado Oil Representation, and unbeknownst to consumers, the Product is not made entirely with avocado oil. Instead, the Product is adulterated with cheaper seed oils.

4. Plaintiff and other consumers purchased the Product and paid a premium price based upon their reliance on the Avocado Oil Representation. Had Plaintiff and other consumers been aware that the Avocado Oil Representation was false, they would not have purchased the Product or would have paid significantly less for it. Accordingly, Plaintiff and Class members have been injured by Defendants' deceptive business practices.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as at least one member of the proposed Class(es) is a citizen of a state different than Defendants' state of citizenship; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interest and costs.

6. This Court has general personal jurisdiction over Defendants because they conduct and transact substantial business in California, and intentionally and purposefully placed the Product into the stream of commerce within California.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Namely, Plaintiff purchased the Product in this District.

**PLAINTIFF**

8. Plaintiff is a citizen of the United States and the State of California, and he currently resides in Foster City, California. In or around September 2026, Plaintiff purchased the Boulder Canyon Chips Variety Pack which include the Boulder Canyon Kettle Cooked Sea Salt Potato Chips Made with Avocado Oil from a Whole Foods store in San Mateo, California. Based on the Product's Avocado Oil Representation, Plaintiff reasonably believed that the Product was made entirely with avocado oil. Had he known that the Product was not made entirely with avocado oil, he would not have purchased it, or would have paid significantly less for it.

9. Despite Defendants' misrepresentation, Plaintiff would purchase the Product, as advertised, if it was actually made entirely with avocado oil. Although Plaintiff regularly shops at various retail stores that carry the Product, absent an injunction of Defendants' deceptive advertising, he will be unable to rely with confidence on Defendants' advertising of the Product in the future. Furthermore, while Plaintiff currently believes that the Product is not made entirely with avocado oil, he lacks personal knowledge as to Defendants' specific business practices, and thus, he will not be able to determine whether the Product truly will accurately reflect its advertising. This leaves doubt in his mind as to the possibility that at some point in the future the Product could be made in accordance with the Avocado Oil Representation. This uncertainty, coupled with his desire to purchase the Product, is an ongoing injury that can and would be rectified by an injunction enjoining Defendants from making the alleged misleading representation. In addition, other Class members will continue to purchase the Product, reasonably but incorrectly, believing that the Product is made entirely with avocado oil.

## DEFENDANTS

10. Defendant UTZ Brands, Inc. is a Delaware corporation with its principal place of business in Hanover, Pennsylvania. Along with Defendant UTZ Quality Foods, LLC, Defendant UTZ Brands, Inc. operates the Boulder Canyon brand which sells a variety of chip products, including the Product challenged in this Complaint. Defendant UTZ Brands, Inc. sells the Product throughout California, including in this District.

11. Defendant UTZ Quality Foods, LLC is a Delaware limited liability company with its principal place of business in Hanover, Pennsylvania. Along with Defendant UTZ Brands, Inc., Defendant UTZ Quality Foods, LLC operates the Boulder Canyon brand which sells a variety of chip products, including the Product challenged in this Complaint. Defendant UTZ Quality Foods, LLC sells the Product throughout California, including in this District.

## FACTUAL ALLEGATIONS

12. Defendants are responsible for the formulation, manufacturing, marketing, labeling, advertising, distribution and sale of Boulder Canyon branded products, which are sold in retail stores across the United States as well as directly on Defendants' website.

13. The Product at issue in this case is the Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips.

14. Defendants have labeled the Product with the phrase "AVOCADO OIL," representing to consumers that their Product is made entirely with avocado oil. The Product is depicted below:




15. However, despite the Avocado Oil Representation, the Product is not made entirely with avocado oil. Instead, the Product is adulterated with cheaper seed oils.

16. Independent scientific testing confirms that the Product is not made entirely with avocado oil. In 2026, researchers at the University of California, Davis, Department of Food Science and Technology and the University of California Agriculture and Natural Resources published a peer-reviewed study (the "Study") of the authenticity of avocado oil used as an

ingredient in commercially processed foods.[1] A true and correct copy of the Study is attached hereto as Exhibit A ("Ex. A").

17. The Study set out to determine whether processed foods, including chips, mayonnaise and salad dressings, that claim to contain avocado oil as the sole oil ingredient in fact contain the oil declared on the label. *Id.* Only products that declared a single edible oil (e.g., avocado oil) in the ingredients, and that did not list any additional edible oils, were included. Across all categories the Study analyzed 74 samples. *Id.* The Study tested 28 avocado oil–labeled chip samples, consisting of two separate production lots of each of 14 different avocado oil–labeled chip products. *Id.* The products were purchased in 2025 and 2026 from retail stores in California and from online sources, and each lot was analyzed in duplicate. *Id.* The brand and product name of every sample tested is identified in the Study's brand information exhibit, a true and correct copy of which is attached hereto as Exhibit B ("Ex. B").[2]

18. The Product at issue in this action was among the avocado oil–labeled chip products tested. Specifically, the Study tested and reported results for two separate lot numbers of the Boulder Canyon Avocado Oil Classic Sea Salt Kettle Style Potato Chips (Samples 1 and 2). *See* Ex. B.

19. To recover and test the oil used in each of the Study's products, the researchers first recovered the lipid (oil) fraction from each chip sample using a published extraction protocol for potato chips. Approximately 30 grams of chips was blended in a food processor. Ex. A. Approximately 10 grams of the crushed chips was then weighed into a cellulose extraction thimble and subjected to Soxhlet extraction with n-hexane at 69°C for 25 cycles. *Id.* The residual hexane was evaporated under a drying step and the sample was left in a fume hood until no hexane remained, yielding the extracted fat from the chips for analysis. *Id.*

20. For the fatty acid profile, the extracted oil was converted to fatty acid methyl esters (a standard chemical preparation that allows the individual fatty acids in any edible oil to be

---

[1] Natalie Lopez-Alvarez et al., *Authenticity of Avocado and Olive Oils Used as Ingredients in Commercially Processed Foods*, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389 .

[2] Brand Information Relating to the Study, *supra* note 1, available at https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2353660743779.

separated and measured), using a published official method for that preparation (COI/T.20/Doc. No 33/Rev.1), and analyzed by gas chromatography with flame ionization detection ("GC-FID"). *Id.* The individual fatty acids were identified against a 37-component certified reference standard covering the full range of fatty acids found in edible oils. *Id.* The measurement method is common to all edible oils; the avocado-specific benchmarks against which the results were judged are set forth in Paragraph 21 below.

21. The fatty acid and sterol profile measured for each chip sample was then compared against the compositional ranges for authentic avocado oil established by the Codex Alimentarius Standard for Named Vegetable Oils (CXS 210-1999). *Id.* Those ranges are designed to encompass the natural variability of authentic avocado oil attributable to cultivar, geographic origin, maturity, and growing conditions. *Id.* The researchers then applied further tolerances that operated in the tested products' favor: a deviation limited to a single fatty acid or sterol marker that did not exceed the Codex limit by more than ten percent was disregarded and the sample was treated as consistent with authentic avocado oil, and a sample that was fully consistent as to one profile and only borderline as to the other was likewise treated as consistent. *Id.* Only samples exhibiting multiple deviations, or patterns inconsistent with authentic avocado oil reference profiles, were classified as inconsistent. *Id.*

22. Both lots of the tested Product failed those criteria and both were classified as compositionally inconsistent with authentic avocado oil. *See* Ex. B.

23. The compositional deviations measured in the avocado oil–labeled chips, including the Product, were not random. Ex. A. They followed a single, consistent pattern: reduced levels of palmitic acid (C16:0), palmitoleic acid (C16:1), cis-vaccenic acid (C18:1 n-7), beta-sitosterol, and clerosterol, together with elevated levels of stearic acid (C18:0), campesterol, stigmasterol, delta-7-stigmastenol, and delta-7-avenasterol. *Id.* That combination is not characteristic of authentic avocado oil. *Id.* It is instead characteristic of cheaper vegetable seed oils, and is the signature of substitution or dilution of avocado oil with such oils. Most of the avocado oil–labeled chips fell outside the Codex ranges for palmitic acid, palmitoleic acid, and stearic acid, and outside the Codex ranges for campesterol, stigmasterol, and delta-7-avenasterol. *Id.* Principal component

analysis of the fatty acid and sterol data confirmed the point: many of the avocado oil–labeled samples clustered not with authentic avocado oil, but with the Study's comparator products formulated with canola, corn, soybean, and/or sunflower oil. *Id.*

24. The cis-vaccenic acid results are particularly probative. Cis-vaccenic acid (C18:1 n-7) is an established marker for detecting seed oil adulteration of avocado oil because it is characteristically elevated in authentic avocado oil and present at markedly lower levels in the common seed oils used to adulterate it. *Id.* In the Study, the avocado oil–labeled samples classified as consistent with authentic avocado oil contained a mean cis-vaccenic acid content of 5.3% ± 1.0% of total fatty acids, clustering in a 4–6% range. *Id.* The samples classified as inconsistent (i.e., the group that includes the Product) contained a mean of only 1.7% ± 0.5%, clustering in a 1–2% range that aligns with typical vegetable seed oil profiles. *Id.* The difference between the two groups was statistically significant ($p < 0.001$). *Id.*

25. These deviations cannot be attributed to frying or to any other ordinary step in the manufacture of chips. *Id.* The researchers specifically tested that explanation by preparing model potato chips and model corn tortilla chips fried in pure avocado oil under commercial frying conditions (180°C for seven minutes and four minutes, respectively), and then extracting and analyzing the oil from those model chips using the same methods described above. *Id.* Frying changed the major fatty acids by less than 0.6%; it changed cis-vaccenic acid by only 0.1%; it changed palmitic acid, palmitoleic acid, and stearic acid by no more than 0.2%; and it left delta-7-avenasterol unchanged. *Id.* In other words, chips fried in authentic avocado oil still test as authentic avocado oil. Those processing-induced changes are a small fraction of the deviations measured in the Product and cannot explain them. *Id.*The only explanation consistent with the data is that the oil in the Product is not entirely avocado oil, but instead consists in substantial part of cheaper seed oils—precisely as Plaintiff alleges, and precisely contrary to the Avocado Oil Representation.

26. The Avocado Oil Representation is material to reasonable consumers because avocado oil is widely regarded as healthier, and therefore more premium, than other cooking oils, and consumers pay more for it as a result.

27. That reputation is well founded. Avocado oil delivers meaningful health benefits, including cardiovascular benefits and anti-inflammatory effects.[3] Avocado oil also performs better than many other cooking oils because of its high smoke point and mild taste.[4]

28. Seed oils, by contrast, are viewed by many consumers as ingredients to be avoided. The eight most prevalent seed oils, known colloquially as the "hateful eight," are believed by many to be toxic, a reputation driven in part by their high linoleic acid content, which is thought to promote inflammation linked to conditions such as arthritis, heart disease, metabolic syndrome, stroke, and type 2 diabetes.[5]

29. For these reasons, many consumers seek to eliminate seed oils from their diets and instead pay a premium for alternatives such as avocado oil. Defendants have capitalized on that consumer preference by labeling and advertising the Product as made entirely with avocado oil when it is not.

30. The reasonable belief that the Product is made entirely with avocado oil was a significant factor in Plaintiff's and other Class members' decisions to purchase the Product. Thus, Defendants promise a product made entirely with avocado oil, but provide consumers with a product that is adulterated with cheaper seed oils.

31. As the entities responsible for the development, labeling, manufacturing, advertising, distribution and sale of the Product, Defendants knew or should have known that the Product's Avocado Oil Representation is false and misleading.

32. Defendants also knew or should have known that Plaintiff and other consumers, in purchasing the Product, would rely on Defendants' false and misleading representation. Nonetheless, Defendants deceptively advertise the Product in order to deceive consumers and gain an unfair advantage in the market.

---

[3] Marcos Flores et al., *Avocado Oil: Characteristics, Properties, and Applications*, 24 Molecules 2172 (June 2019), https://pmc.ncbi.nlm.nih.gov/articles/PMC6600360/.

[4] *Yes, Avocado Oil Is Good for You*, Cleveland Clinic (Dec. 19, 2024), https://health.clevelandclinic.org/is-avocado-oil-good-for-you.

[5] Julia Zumpano, RD, LD, *Seed Oils: Are They Actually Toxic?*, Cleveland Clinic (March 3, 2025), https://health.clevelandclinic.org/seed-oils-are-they-actually-toxic.

33. Consumers are willing to pay more for the Product based on the belief that the Product is made entirely with avocado oil. Plaintiff and other consumers would have paid significantly less for the Product, or would not have purchased it at all, had they known the truth about it. Thus, through the use of misleading representation, Defendants command a price that Plaintiff and the Classes would not have paid had they been fully informed.

34. Therefore, Plaintiff and other consumers purchasing the Product have suffered injury in fact and lost money as a result of Defendants' false and deceptive practices, as described herein.

## PLAINTIFF LACKS AN ADEQUATE REMEDY AT LAW

35. Plaintiff pleads the equitable claims and remedies asserted in this Complaint, including restitution and injunctive relief, in the alternative to the legal claims and remedies asserted herein. Plaintiff and the Classes are entitled to do so because they lack an adequate remedy at law for the equitable relief sought. As to the restitution sought, the legal remedies available to Plaintiff and the Classes are inadequate because they are not equally prompt, certain, or efficient and require proof of elements and entitlement to relief different from those required for restitution. Accordingly, if Plaintiff or any Class member is unable to recover damages under the legal claims asserted herein, restitution may nevertheless be necessary to restore money wrongfully obtained by Defendants. As to injunctive relief, damages are retrospective and cannot redress the prospective injury alleged in Paragraph 9 above. Only an injunction can remedy Plaintiff's continuing inability to rely on Defendants' labeling of the Product.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

> **California Class**
> All residents of California who purchased the Product within the applicable statute of limitations period ("California Class").
>
> **California Consumer Subclass**
> All residents of California who purchased the Product for personal, family, or household purposes, within the applicable statute of limitations period ("California Consumer Subclass") (together with the California Class, the "Classes").

37. Excluded from the Classes are the following individuals and/or entities: Defendants and their parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

38. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether class certification is appropriate.

39. Plaintiff is a member of all the Classes.

40. **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by Defendants' records through their online marketplace, or through sales data obtained via third parties. At a minimum, there likely are tens of thousands of Class members.

41. **Commonality:** There are questions of law and fact common to the proposed Classes. Common questions of law and fact include, without limitation:

a. whether Defendants' course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

b. whether reasonable consumers would rely upon Defendants' representation about the Product and reasonably believe the Product is made entirely with avocado oil;

c. whether Defendants knew or should have known their representation was false or misleading;

d. whether Defendants were unjustly enriched by retaining monies from the sale of the Product;

e. whether certification of each Class is appropriate under Rule 23;

f. whether Plaintiff and the members of each Class are entitled to declaratory, equitable, or injunctive relief, and/or other relief, and the scope of such relief; and

g. the amount and nature of the relief to be awarded to the Plaintiff and the Classes, including whether Plaintiff and the Classes are entitled to punitive damages.

42. **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Product. Plaintiff and the members of the Classes relied on the representation made by Defendants about the Product prior to purchasing the Product. Plaintiff and the members of each Class paid for Defendants' Product and would not have purchased it (or would have paid substantially less for it) had they known that Defendants' representation was untrue.

43. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

44. **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Classes. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' misconduct detailed at length in this Complaint.

45. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of tens of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint. Further, because the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation

make it difficult, if not impossible, for individual Class members to obtain redress. Furthermore, many of the Class members may be unaware that claims exist against Defendants.

46. **Declaratory and Injunctive Relief:** Pursuant to Rule 23(b)(2), declaratory and injunctive relief is appropriate in this matter. Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members as a whole. Unless a class-wide injunction is issued, Defendants will continue to advertise, market, promote, and sell the Product in an unlawful and misleading manner, as described throughout this Complaint, and members of the Classes will continue to be misled, harmed, and denied their rights under the law.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq.***
**(*For the California Consumer Subclass*)**

47. Plaintiff repeats the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

48. Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendants pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*

49. The Product is a "good" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of the Product by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

50. Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By representing the Product with the Avocado Oil Representation, Defendants have represented and continue to represent that the Product has characteristics (i.e., that it is made entirely with avocado oil) that it does not have. Therefore, Defendants have violated section 1770(a)(5) of the CLRA.

51. Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By representing the Product with the Avocado Oil Representation, Defendants have represented and continue to represent that the Product is of a particular standard (i.e., that it is made entirely with avocado oil) when it is not of that standard. Therefore, Defendants have violated section 1770(a)(7) of the CLRA.

52. Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By advertising the Product with the Avocado Oil Representation, Defendants have advertised the Product with characteristics they intended not to provide to consumers. As such, Defendants have violated section 1770(a)(9) of the CLRA.

53. Cal. Civ. Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." By representing the Product with the Avocado Oil Representation and then supplying a Product that is adulterated with cheaper seed oils, Defendants have supplied the Product in a manner inconsistent with its previous representation. Therefore, Defendants have violated section 1770(a)(16) of the CLRA.

54. At all relevant times, Defendants have known or reasonably should have known that the advertising of the Product's Avocado Oil Representation is false and misleading, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on the Avocado Oil Representation when purchasing the Product. Nonetheless, Defendants deceptively advertise the Product as such in order to deceive consumers into believing that the Product is made entirely with avocado oil, when it is not.

55. Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendants' misleading representation when purchasing the Product. Moreover, based on the materiality of Defendants' misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of the California Consumer Subclass.

56. Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendants because they would have paid significantly less

for the Product, or would not have purchased it at all, had they known that the Product is not made entirely with avocado oil.

57. Under Cal. Civ. Code § 1782, on or around September 25, 2026, counsel for Plaintiff mailed a notice and demand letter by certified mail to Defendants, outlining that Defendants have violated the CLRA for the reasons described herein. If within 30 days of receipt, Defendants do not agree to rectify the problems identified herein, Plaintiff will amend this Complaint to seek damages pursuant to Cal. Civ. Code § 1780 on behalf of himself and the members of the California Consumer Subclass.

58. In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue, attached hereto as Exhibit C to this Complaint.

**SECOND CLAIM FOR RELIEF**
**Violation of California's False Advertising Law**
**California Business & Professions Code §§ 17500, *et seq.***
**(*For the California Class*)**

59. Plaintiff repeats the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

60. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendants pursuant to California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

61. The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

62. Defendants have represented and continue to represent to the public, including Plaintiff and members of the proposed California Class, through their deceptive advertising, that the Product is made entirely with avocado oil when it is not. Because Defendants have disseminated misleading information regarding the Product, and Defendants know, knew, or

should have known through the exercise of reasonable care that the representation was and continues to be misleading, Defendants have violated the FAL.

63. As a result of Defendants' false advertising, Defendants have and continue to unlawfully obtain money from Plaintiff and members of the California Class. Plaintiff therefore requests that the Court cause Defendants to restore this fraudulently obtained money to him and members of the proposed California Class, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**California Business & Professions Code §§ 17200, *et seq.***
**(*For the California Class*)**

64. Plaintiff repeats the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

65. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendants pursuant to California Business & Professions Code § 17200 ("UCL").

66. The UCL, Cal. Bus. & Prof. Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

67. Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendants' false and misleading advertising of the Product was and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws as described herein. As a result of Defendants' unlawful business acts and practices, Defendants have unlawfully obtained money from Plaintiff and members of the proposed California Class.

68. Under the UCL, a business act or practice is "unfair" if its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity

of the harm to the alleged victims. Defendants' conduct was and continues to be of no benefit to purchasers of the Product, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the Product's advertising. Deceiving consumers into believing they will receive a product made entirely with avocado oil, but failing to provide the Product as advertised, is of no benefit to consumers. Therefore, Defendants' conduct was and continues to be "unfair." As a result of Defendants' unfair business acts and practices, Defendants have and continue to unfairly obtain money from Plaintiff and members of the proposed California Class.

69. Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendants' conduct here was and continues to be fraudulent because, due to the Product's Avocado Oil Representation, the Product has the effect of deceiving consumers into believing they will receive a product made entirely with avocado oil when the Product is not manufactured as such. Because Defendants misled Plaintiff and members of the California Class, Defendants' conduct was "fraudulent." As a result of Defendants' fraudulent business acts and practices, Defendants have and continue to fraudulently obtain money from Plaintiff and members of the California Class.

70. Plaintiff requests that the Court cause Defendants to restore this unlawfully, unfairly, and fraudulently obtained money to him, and members of the proposed California Class, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the proposed California Class may be irreparably harmed and/or denied an effective and complete remedy.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**Cal. Com. Code § 2313**
**(*For the California Class*)**

71. Plaintiff repeats the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

72. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendants for breach of express warranty under Cal. Com. Code § 2313.

73. California's express warranty statutes provide that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

74. Plaintiff and members of the California Class formed a contract with Defendants at the time they purchased the Product. As part of those contracts, Defendants represented the Product as "AVOCADO OIL" chips, representing that the Product is made entirely with avocado oil.

75. The Product's Avocado Oil Representation is: (a) an affirmation of fact or promise made by Defendants to consumers that the Product is made entirely with avocado oil; (b) became part of the basis of the bargain to purchase the Product when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Product would conform to the affirmations of fact or promises. In the alternative, the representation about the Product is a description of goods which was made as part of the basis of the bargain to purchase the Product, and which created an express warranty that the Product would conform to the product description.

76. Plaintiff and members of the California Class reasonably and justifiably relied on the foregoing express warranties, believing that the Product did in fact conform to those warranties.

77. Defendants have breached the express warranties made to Plaintiff and members of the California Class by failing to provide the Product in accordance with the Avocado Oil Representation.

78. Plaintiff and members of the California Class paid a premium price for the Product but did not obtain the full value of the Product as represented. If Plaintiff and members of the California Class had known of the true nature of the Product, they would not have been willing to pay the premium price associated with it. As a result, Plaintiff and members of the California Class suffered injury and deserve to recover all damages afforded under the law.

79. Plaintiff and the other California Class members notified Defendants of the breaches of their express warranties within a reasonable time and/or were not required to do so.

Indeed, Plaintiff sent a notice letter to Defendants regarding their breaches on or around September 25, 2026. Defendants were also on notice of their breaches from other sources, including the Study cited *supra*.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**Cal. Com. Code § 2314**
**(*For the California Class*)**

80. Plaintiff repeats the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

81. Plaintiff brings this claim individually and on behalf of the members of the California Class against Defendants for breach of implied warranty under Cal. Com. Code § 2314.

82. California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

83. California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

84. Defendants are merchants with respect to the sale of the Product. Therefore, a warranty of merchantability is implied in every contract for sale of the Product to California consumers.

85. By advertising the Product with the Avocado Oil Representation, Defendants made an implied promise in the Product's labeling that the Product is made entirely with avocado oil. The Product, however, has not conformed to this promise because the Product is adulterated with cheaper seed oils. Plaintiff, as well as other California consumers, did not receive the goods as impliedly warranted by Defendants to be merchantable. Therefore, the Product is not merchantable under California law and Defendants have breached their implied warranty of merchantability in regard to the Product.

86. If Plaintiff and members of the California Class had known that the Product's Avocado Oil Representation was false and misleading, they would not have been willing to pay

the premium price associated with it. Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiff and members of the California Class have suffered injury and deserve to recover all damages afforded under the law.

87. Plaintiff and the other California Class members notified Defendants of the breaches of their implied warranties within a reasonable time and/or were not required to do so. Indeed, Plaintiff sent a notice letter to Defendants regarding their breaches on or around September 25, 2026. Defendants were also on notice of their breaches from other sources, including the Study cited *supra*.

**SIXTH CLAIM FOR RELIEF**
**Quasi Contract/Unjust Enrichment/Restitution**
**(*For the California Class*)**

88. Plaintiff repeats the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

89. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class, against Defendants for unjust enrichment.

90. As alleged herein, Defendants have intentionally and recklessly made a misleading representation to Plaintiff and members of the California Class, to induce them to purchase the Product. Plaintiff and members of the California Class have reasonably relied on the misleading representation and have not received all of the benefits (i.e., a Product made entirely with avocado oil) promised by Defendants through the Product's Avocado Oil Representation. Plaintiff and members of the proposed California Class have therefore been induced by Defendants' misleading and deceptive representation about the Product, and paid more money to Defendants for the Product than they otherwise would and/or should have paid.

91. Plaintiff and members of the proposed California Class have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiff and members of the California Class.

92. The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the proposed California Class—i.e., Plaintiff and members of the California Class did not receive the full value of the benefit conferred upon Defendants. Therefore,

it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them.

93. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the proposed California Class, are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

**SEVENTH CLAIM FOR RELIEF**
**Common Law Fraud**
**(*For the California Class*)**

94. Plaintiff repeats the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

95. Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendants for common law fraud.

96. Defendants have willfully, falsely, and knowingly misrepresented the Product through the Product's Avocado Oil Representation, as they knew that the Product was not made entirely with avocado oil.

97. Defendants have therefore made a knowing, fraudulent misrepresentation as to the Product.

98. Defendants' misrepresentation was material (i.e., it affected the purchasing decisions of Plaintiff and members of the California Class given its importance), and is central to the Product's functionality because the Product is advertised as made entirely with avocado oil, but does not conform to that representation.

99. Defendants knew or recklessly disregarded the fact that the Product's Avocado Oil Representation was false and deceptive.

100. Defendants intended that Plaintiff and members of the California Class rely on the Product's advertising, as if they had known the truth that the Product's Avocado Oil Representation was false and misleading, they would have paid less for the Product or would not have purchased it at all.

101. Plaintiff and members of the California Class have reasonably and justifiably relied on Defendants' misrepresentation when purchasing the Product, and if Plaintiff and members of the California Class had known the truth about the Product, they would not have paid monies for the Product or would have paid less monies for the Product.

102. For these reasons, Plaintiff and members of the California Class have suffered monetary losses, including interest they would have accrued on these monies, as a direct and proximate result of Defendants' fraudulent conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, respectfully prays for the following relief:

A. Certification of this case as a class action on behalf of the proposed Classes defined above, appointment of Plaintiff as Class representative, and appointment of his counsel as Class counsel;

B. A declaration that Defendants' actions, as described herein, violate the statutes and laws described herein;

C. An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the proposed Classes, including, inter alia, an order prohibiting Defendants from engaging in the unlawful acts described above;

D. An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and the proposed Classes as a result of their unlawful, unfair and fraudulent business practices described herein;

E. An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendants' conduct;

F. An award of nominal, punitive, and statutory damages;

G. An award to Plaintiff and his counsel of reasonable expenses and attorneys' fees;

H. An award to Plaintiff and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I. For such further relief that the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the proposed Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

Dated: September 25, 2026

**SHAMIS & GENTILE, P.A.**

By: */s/ Katherine S. Phillips*
Katherine S. Phillips (SBN: 353048)
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 479-2299
kphillips@shamisgentile.com

**EDELSBERG LAW, P.A.**
Scott A. Edelsberg (SBN: 330090)
Gabriel Mandler**
1925 Century Park East, Ste. 1700
Los Angeles, CA 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com
gabriel@edelsberglaw.com

***pro hac vice application forthcoming*

*Attorneys for Plaintiff and the Putative Classes*